UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Jackson National Life
Insurance Company</u>

    v.                              Civil No. 07-00259-JL
                                                      Opinion No. 2008 DNH 094
<u>Robert G. Economou, et al.</u>

**O R D E R**

Plaintiff Jackson National Life Insurance Company ("JNL") initiated this interpleader action under 28 U.S.C. § 1335[1] in order to settle a dispute over the proceeds of an annuity it had issued to Henry O. LeTourneau.  The named death beneficiaries of the annuity are claimants Robert G. Economou and Donna Normand, LeTourneau's stepchildren ("the stepchildren" or "the stepchildren claimants").  Claimant Mary Ann Greska, LeTourneau's biological child, asserts that she and LeTourneau's other biological offspring are entitled to the annuity proceeds due to undue influence, abuse, and neglect inflicted on the decedent by the stepchildren's mother.

---

[1] The jurisdictional minimum for "statutory interpleader" under § 1335 differs from "rule interpleader" under Fed. R. Civ. P. 22 in that the jurisdictional minimum for the amount in controversy under the statutory version is $500, while the minimum for rule interpleader, which falls under the general rules of diversity jurisdiction, remains $75,000.

Jurisdiction, uncontested by the parties in this case, lies in this court under 28 U.S.C. § 1335 (2006) (statutory interpleader).

The stepchildren have moved to dismiss the case on the basis of *forum non conveniens*, or in the alternative, to transfer this case to a different venue pursuant to 28 U.S.C. § 1404(a) (2006). Oral argument on the motion was heard on April 21, 2008. For the reasons set forth below, the motion to dismiss is denied, and the motion to transfer is granted.

I.   BACKGROUND

In 2002, JNL issued a "Target Select Deferred Annuity" to LeTourneau. The annuity provided that certain benefits would be payable to a designated beneficiary or beneficiaries upon LeTourneau's death. In 2004, LeTourneau designated Greska, who is his biological daughter, and two other biological children as beneficiaries. Two years later, LeTourneau executed and sent to JNL a "beneficiary change form" designating his stepchildren, Economou and Normand, as equal beneficiaries, to the exclusion of the biological children. About seven months later, LeTourneau died. The ensuing death certificate, issued by Florida authorities, indicated that the cause of death was pneumonia with

an approximate onset three weeks prior, and "advanced dementia" with an approximate onset one year prior.

Economou and Normand each asserted a claim for fifty percent of the death benefit. Receiving information that the biological children, including Greska, intended to challenge the change in beneficiary designation because of LeTourneau's dementia, JNL initiated this § 1335 interpleader action.[2]

Greska, who lives in New Hampshire, asserts that LeTourneau's spouse at his death (the stepchildren's mother) exerted undue influence on him and subjected him to abuse and neglect, causing him to execute the beneficiary change form designating the stepchildren as beneficiaries. Greska alleges (but does not specify) several incidents of abuse and neglect occurring in Florida, as well as indicia of dementia on LeTourneau's part, during 2006. The alleged manifestations of dementia, instances of abuse and neglect, and the execution of the beneficiary change form all took place in, or in the vicinity of, Port Charlotte, Florida, where LeTourneau resided until his death. The stepchildren claimants, Economou and Normand, reside in Tewksbury, Massachusetts, and Peabody, Massachusetts,

---

[2] Two other natural children claimants, one living in New Hampshire and the other in Florida, did not appear in this action and were subsequently defaulted.

respectively.  They assert that LeTourneau's last will and testament was executed on April 10, 2006, in Charlotte County, Florida, at which time witnesses swore that LeTourneau was of sound mind, and under no constraint or undue influence.  They further assert that on May 1, 2006, LeTourneau was examined by his long-time treating physician, presumably in or near Port Charlotte, Florida, who found him to be of sound mind.  Claiming to have had no knowledge of LeTourneau's designation of them as beneficiaries until his death, the stepchildren dispute that he was suffering from advanced dementia for a period of one year prior to his death as indicated on the death certificate.

   Having deposited the disputed funds with the court (see 28 U.S.C. § 1335(a)(1)), and recovered its costs and fees, see Trs. of Directors Guild of Am.-Producer Pension Benefits Plan v. Tise, 234 F.3d 415, 426 (9th Cir. 2000); Ferber Co. v. Ondrick, 310 F.2d 462, 467 (1st Cir. 1962), JNL was dismissed from the case in accordance with the customary procedure in interpleader actions.  See Hudson Sav. Bank v. Austin, 479 F.3d 102, 107 (1st Cir. 2007).

**II.   ANALYSIS**

The motion to dismiss on *forum non conveniens* grounds requires little consideration.  *Forum non conveniens* is "a discretionary tool for the district court to dismiss a claim, even when" as here, "it has proper jurisdiction." Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) and Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518 (1947)).  "[A] supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined," *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare cases where a state or territorial court serves litigational convenience best."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., ___ U.S. ___, 127 S. Ct. 1184, 1190 (2007) (brackets in original; internal citations omitted) (citing American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994) and 14D Charles Alan Wright *et al.*, Federal Practice and Procedure § 3828, at 620-623 & nn.9-10 (3rd ed. 2007)).

Since the alternative forum at issue in this case is not a foreign country, but rather the Middle District of Florida, a *forum non conveniens* dismissal would be improper in this case.

5

The stepchildren claimants' reliance on the doctrine is misplaced, and their motion to dismiss is denied. The court will proceed to address their motion to transfer venue under 28 U.S.C. § 1404(a).

**Applicable legal standard**

"Under § 1404(a),[3] a district court may transfer any civil action to any other district where it may have been brought '[f]or the convenience of parties and witnesses, in the interest of justice.'" Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (quoting 28 U.S.C. § 1404(a) (2006) (bracketed footnote added)).[4] "The burden of proof rests with the party

---

[3] The stepchildren claimants have not argued that venue in the District of New Hampshire is improper. Thus, the court need not address 28 U.S.C. § 1406(a), which applies where venue is improper in the transferor court.

[4] The opening provision of the statute, entitled "Change of venue," provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Although the parties neither briefed nor argued this issue, the court finds that the Middle District of Florida is an "other district or division where [the interpleader action] might have been brought." Id. A statutory interpleader action may be brought in the district where one or more of the claimants reside. 28 U.S.C. § 1397. JNL has effected valid service of process on interpleader defendant Cecile C. Payne,

6

seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum." Id. (citing Gulf, 330 U.S. at 508 (applying the doctrine of *forum non conveniens*)). A properly grounded motion to transfer venue is committed to the discretion of the transferor court, which has wide latitude in determining whether to grant it. Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003).

The text of the transfer statute itself (see supra at n.5) sets forth three factors which form the basis of the court's consideration (but to which the court's inquiry is not strictly limited):  (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. See id.  "The three factors mentioned in the statute, convenience of parties and witnesses and the interest of justice, are broader generalities that take on a variety of meanings in the context of specific cases.  Further, the statute gives no hint about how these broad categories are to be weighed against each other."  15 Wright, supra, § 3847 at 97-98.  The First Circuit has stated that while the compendia of factors is a helpful starting point, "not every item applies in every case and, in the last analysis,

---

whose domicile at the time was Port Charlotte, Florida.  Although Payne subsequently defaulted, see supra n.2, there is no question that this action could have been initiated in that district since she did reside there at its commencement.

the list of factors is illustrative rather than all-inclusive. 'The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.'" Iraquorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000) (quoting Koster, 320 U.S. at 527); see also Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 n.3 (7th Cir. 1986) (noting that while "the trial judge is limited to the three factors as specifically mentioned in § 1404(a), . . . these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case").

The courts, drawing heavily on concepts from § 1404(a)'s predecessor doctrine, *forum non conveniens*, have broken down the statute's three enumerated grounds for transfer -- convenience to parties, convenience to witnesses, and the interest of justice -- into "private-interest" and "public-interest" factors see, e.g., Coady, 223 F.3d at 11.  The private-interest factors are:

- the plaintiff's choice of forum;
- location of the operative events in the case;
- convenience of the parties;
- the convenience of the witnesses;
- cost of obtaining witnesses;
- location of counsel;
- ability to compel attendance of witnesses;

- accessibility and location of sources of proof;
- possibility of a jury view; and
- the existence of a contractual forum/selection clause.

See id.; see also Cianbro Corp v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1987); 17 James Wm. Moore *et al.*, Moore's Federal Practice, § 111.13[1][b], at 111-67-111-68 (3rd ed. 2008); 15 Wright, supra, § 3847, at 109.

**Plaintiff's choice of forum.**  Although "there is a strong presumption in favor of the plaintiff's choice of forum," Coady, 223 F.3d at 11, "[s]ome courts have said that [the presumption] is less significant in certain contexts such as . . . when the plaintiffs . . . have no real interest in the outcome of the action."  15 Wright, supra § 3846, at 127-129 & n.14 (citing Mutual of Omaha Ins. Co. v. Dolby, 531 F. Supp. 511 (E.D. Pa. 1982) (finding presumption inapplicable in interpleader cases). Fitting this description, interpleader actions do not use the "plaintiff's choice" presumption.  In re Monies on Deposit in Accounts at Stearns Bank Nat'l Ass'n, No. 06-542, 2006 WL 3841518, at *1 (D. Minn. Dec. 29, 2006) ("However, where the plaintiff has no underlying interest in where the case is litigated, as in an interpleader action, courts need not defer to the plaintiff's choice of venue.") (citing Wilmington Trust Co.

v. Gillespie, 397 F. Supp. 1337, 1341 n.3 (D. Del. 1975)); Reliastar Life Ins. Co. of N.Y. v. LeMone, No. 05-545, 2006 WL 733968, at *5 (W.D. Va. Mar. 16, 2006); Bankers Trust Co. of W. N.Y. v. Crawford, 559 F. Supp. 1359, 1364 (W.D.N.Y. 1983) ("In an interpleader action, however, the plaintiff has no real interest concerning the jurisdiction in which the dispute between or among the defendants/claimants is to be litigated.  There is thus no reason to defer to its selection of forum."); see also Employees Sav. Plan of Mobil Oil Corp. v. Vickery, 99 F.R.D. 138, 143 (S.D.N.Y. 1983).  Since JNL has already been dismissed from the case and awarded its fees and costs, it has no real interest in its outcome, and in fact has filed a pleading stating that it takes no position on the request to transfer.  Its choice of forum therefore carries no presumptive weight.  Thus, this factor militates neither for nor against the requested transfer.

**Location of the operative events in the case.**  While the various claimants to the annuity proceeds reside in New England states, the events that will determine the outcome occurred in and around Port Charlotte, Florida.  LeTourneau's execution of the beneficiary change form took place there, as did the execution of his last will and testament and his most recent examination by a physician, both of which may be probative as to his mental condition at the relevant time.  Further, any abusive,

neglectful, or coercive conduct amounting to duress or undue influence on the part of LeTourneau's spouse, as alleged by Greska, also occurred in Florida. Indeed, the very event cited by Greska, involving LeTourneau's "wandering lost and confused in or around May or June of 2006," resulted in his being found by the Charlotte County (Florida) Sheriff's Department. Thus, the location of the operative facts favors the Middle District of Florida as the superior venue.

**Convenience of the parties.** If "convenience" means no more than ease of travel to the courthouse, the current venue has an edge over Florida where the convenience of the parties is concerned. Pro se claimant Greska is a resident of New Hampshire, and the stepchildren claimants reside in Massachusetts, on New Hampshire's southern border. The stepchildren claimants, however, have requested this transfer, and at the hearing on their motion argued persuasively that defending this litigation in New Hampshire will be unduly inconvenient and unduly burdensome for them, because it will require the transportation of witnesses (both fact and opinion witnesses, including medical and law enforcement professionals) from Florida to New Hampshire. These arguments in favor of transfer slightly outweigh Greska's plea for the case to remain here.

**Convenience of the witnesses.** This court has held that the convenience of the witnesses is "probably the most important factor." Sousa v. TDBanknorth Ins., 2006 DNH 034, at 5 (quoting Fairview Machine & Tool Co. v. Oakbrook Int'l, Inc., 56 F. Supp. 2d 134, 141 (D. Mass. 1999) and Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991)).  Virtually all of the non-party witnesses--LeTourneau's treating physician, other medical personnel, and other witnesses to LeTourneau's behavior (both in the year leading up to his death and at the times he executed his will and the beneficiary change form), as well as his daughter Cecile, the members of the Charlotte County Sheriff's Department, key staff of the Elderly Abuse Division of the Florida Department of Health and Human Services and, significantly, the target of Greska's accusations of abuse, neglect and undue influence, Lorraine Letourneau--all reside in Florida, presumably not far from LeTourneau's home while alive.  These witnesses will be required to produce evidence, testify at depositions, and testify at trial.  Since the convenience of these witnesses is "probably the most important factor," id., it strongly favors a Florida venue.

**Cost of obtaining witnesses and evidence.** Again, nearly every important witness in this case resides or works in the vicinity of Port Charlotte, Florida.  Consideration of the cost

12

of obtaining witnesses goes hand-in-hand with the question of convenience to witnesses.  Although some of the issues raised by Greska's allegations would likely be narrowed by the discovery process, necessitating the actual trial testimony of fewer witnesses, it seems inevitable that the testimony of several Florida residents will be required at trial.  The comparative costs of transporting these witnesses to court in Florida, as opposed to here in Concord, New Hampshire, tips the scale strongly toward Florida as the better venue.

**Location of counsel.**  The location of the parties' respective counsel has little bearing on this analysis.  Greska is proceeding pro se.  And as established at the motion hearing, the other claimants will likely retain Florida counsel if the matter is transferred there.

**Comparative ability to compel attendance of witnesses.**  Assessing the relative power of the current venue and the transferee venue to require the attendance of witnesses necessarily focuses on any uncooperative or indifferent witnesses who might prefer not to testify at trial.  The Florida venue has the clear edge in this regard.  As already noted, nearly every important witness in the case resides or works in the area of Charlotte County, Florida.  Since a District Court's trial subpoena power is limited to 100 miles from the location of the

trial, see Fed. R. Civ. P. 45(b)(2), and the 1991 amendments to Rule 45 were enacted to enable courts to compel the attendance of in-state witnesses, see Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); Fed. R. Civ. P. 45 advisory committee's notes, 1991 am. ¶ 1, this factor favors the requested transfer.

**Accessibility and the location of sources of proof.** As a general matter, witnesses and documents tend to follow events, costs tend to follow witnesses and documents, and sources of proof--the factor in question here--tend to follow all of these. In addition to the individual witnesses who are in themselves sources of proof, the other likely sources are the institutions where some of these witnesses work and potentially relevant documents are maintained. In this case, those institutions include the Charlotte County Sheriff's Department, any medical practice or facility where LeTourneau was treated or examined prior to his death, the Elderly Abuse Division of the Florida Department of Health and Human Services, and the Office of Vital Statistics that issued LeTourneau's death certificate. All of these institutions are located in the Middle District of Florida, which weighs in favor of a transfer.

Mr. LeTourneau's medical file, any deputy sheriff's report, any attorney's notes regarding the execution of LeTourneau's will

14

or the beneficiary change form in question, and any other document generated by the Elderly Abuse Division of the Florida Department of Health and Human Services exist in, and are maintained by institutions and offices located in, the state of Florida. While the portability of documentary evidence makes this factor less significant than those set forth above, nothing about this factor suggests that New Hampshire is a more convenient or otherwise superior venue.

**Other factors.** The remaining factors listed above -- the possibility of a jury view, and the existence of a contractual forum selection clause -- have no bearing on this matter. A trial in this case will not require a jury view, and there has been no allegation by any party that the annuity in question contained a forum selection clause.

The public-interest factors traditionally relate to the efficient administration of the court system. See Coffey, 796 F.2d at 220-21. They include:

- administrative difficulties caused by court congestion;
- local interest in the controversy and the burden of jury duty; and
- the proposed forum's familiarity with the governing law. See id.

**Administrative difficulties.** Neither Greska nor the stepchildren have relied on the relative level of court

congestion in this district and the Middle District of Florida in their competing arguments for and against a transfer. Based on the court's own research, the two fora do not appear significantly different in this respect. <u>See</u> Administrative Office of the United States Courts, <u>Federal Court Management Statistics</u> (2007). So this consideration does not factor into the analysis of the transfer motion.

   **Local interest and burden on jurors.** This interpleader matter will not require a jury trial, so the burdens of jury duty have no bearing on the disposition of the motion. And local interest in the controversy--whether, and to what extent allegedly abusive and neglectful conduct and accompanying duress by LeTourneau's spouse undermined the validity of the beneficiary change--does not figure to be particularly high. If one venue has an edge, it is likely the Middle District of Florida, whose residents may have some interest in the judicial resolution of controversy over estate planning documents executed there. Thus, to the extent that this factor has any bearing, it weighs in favor of the Florida venue.

   **Familiarity with governing law.** Greska does not dispute the other parties' assertion that Florida law will govern the determination of the validity of the beneficiary change form, and the court sees no reason to question it. Although this court is

16

capable of construing Florida law and applying it to the evidence presented, and a federal court should not shirk its responsibility to interpret and apply the law of other jurisdictions, see <u>Omni Hotel Mgmt. v. Roundhill Dev., Ltd.</u>, 675 F. Supp. 745, 753 (D.N.H. 1997), this admonition presupposes the obvious:  standing alone, a requirement to apply Florida law favors (but does not compel) a transfer to a Florida venue. There can be little question that the United States District for the Middle District of Florida is better versed in, and in a better position to apply, Florida law.

**CONCLUSION**

The stepchildren claimants' motion to dismiss on *forum non conveniens* grounds is DENIED.  Their motion to transfer venue to the Middle District of Florida is GRANTED.  Although several of the private-interest and public-interest factors favor the requested transfer, the court relies most heavily on what is "probably the most important factor," <u>Sousa</u>, 2006 DNH 034, at 5, the convenience of the witnesses involved.

The court is mindful, however, of Greska's position that, due primarily to her pro se status, the transfer will cause her substantial inconvenience because she believes, prosecuting her claims in Florida is beyond her resources and expertise.  The

17

court notes, however, that the location of the large majority of the witnesses in Florida would in all likelihood have required her to travel there anyway in the course of litigating her claim because, again, this court cannot compel those witnesses to travel to New Hampshire to testify.  For this reason, before this case is transferred to the Middle District of Florida, the Clerk will wait 30 days from the date of this order to enable Greska to pursue an appeal of this court's ruling if she wishes.  If Greska does not take an appeal within that time, however, the matter shall be transferred to the Clerk for the United States District Court for the Middle District of Florida, and administratively closed in this court.

    **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    April 30, 2008

cc:  William D. Pandolph, Esq.
     Ronald J. Caron, Esq.
     Jaye Rancourt, Esq.
     Mary Ann D. Greska, pro se